WILLIAM M. AUDET (CA SBN 117456)
waudet@audetlaw.com
JONAS P. MANN (CA SBN 263314)
jmann@audetlaw.com
THEODORE H. CHASE (CA SBN 295823)
tchase@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
t. 415.568.2555
f. 415.568.2556

Gary E. Mason (to be admitted *pro hac vice*)
Benjamin S. Branda (to be admitted *pro hac vice*)
Esfand Y. Nafisi (to be admitted *pro hac vice*)
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., NW, Ste. 1605
Washington, DC 20036
t: 202.429.2290
f. 202.429.2294
Email: gmason@wbmllp.com
Email: bbranda@wbmllp.com
Email: enafisi@wbmllp.com

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY FARLEY, AND ALEXANDER MONTGOMERY** individually and on behalf of all others similarly situated, <br><br> PLAINTIFFS, <br><br> v. <br><br> **NVIDIA CORPORATION** <br><br> DEFENDANT. | **CIVIL ACTION NO.** <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. **Violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)** <br> 2. **Violation of California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)** <br><br> **JURY DEMAND** |

Plaintiffs, Timothy Farley and Alexander Montgomery (collectively "Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and all other persons and

entities similarly situated, allege against Defendant NVIDIA Corporation ("NVIDIA" or "Defendant") the following facts and claims, upon personal knowledge as to matter relating to himself and upon information and belief as to all other matters, which all other allegations are likely to have evidentiary support after reasonable opportunity for further investigation and discovery and, by way of this Class Action Complaint, aver as follows:

## NATURE OF THE ACTION

1.      This is a nationwide class action on behalf of all consumers who purchased graphics and video cards incorporating the NVIDIA GeForce GTX 970 graphics processing units ("GTX 970"). The GTX 970 was sold to consumers based on false and misleading representations that it operates with a 4 gigabyte ("GB") pool of video random access memory ("VRAM"), 64 Raster Operations Pipelines ("ROP"), and 2048 kilobytes ("KB") of L2 cache capacity.

2.      In actuality, (i) the VRAM in the GTX 970 is divided into two separate pools of memory, with one high performance pool of 3.5GB VRAM, and a second nearly unusable pool of 0.5GB VRAM; (ii) the GTX 970 contains only 56 ROP; and (iii) the GTX 970 only has 1792KB of L2 cache capacity.

3.      NVIDIA deceived consumers by misrepresenting the specifications, characteristics, qualities, and capabilities of the GTX 970 through advertising and marketing. Plaintiffs and consumers were aware of and relied upon these representations at the time of purchase and NVIDIA's misrepresentations instilled a perception in consumers that the product would, in fact, conform to the advertised and marketed specifications, characteristics, qualities, and capabilities. Deceived consumers have mobilized en masse over their purchase of the GTX 970, which does not conform to the specifications and capabilities advertised by NVIDIA. As of the filing of this Complaint, a petition seeking refunds for the GTX 970 has garnered over 10,000 signatures.[1]

4.      NVIDIA was aware that it was advertising and disseminating false information about the GTX 970's specifications, characteristics, qualities, and capabilities.

---

[1] https://www.change.org/p/nvidia-refund-for-gtx-970

NVIDIA intentionally withheld the actual specifications and capabilities from consumers, which were only discovered after consumers noticed performance issues with the GTX 970. After consumers discovered that the GTX 970 does not contain the specifications that NVIDIA said it had, NVIDIA's Senior VP of GPU Engineering, Jonah Alben, disclosed that the GTX 970 does not possess the advertised and marketed specifications, characteristics, qualities, and capabilities.[2] Less than a month later, NVIDIA's CEO acknowledged that the specifications disseminated to the public differ from the GTX 970's actual specifications. Plaintiffs and the Class purchased the GTX 970 at a premium price based upon NVIDIA's misleading statements as to the GTX 970's specifications, characteristics, qualities, and capabilities. As a result, Plaintiffs and the putative Class and sub-class suffered injuries.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act, in that (i) there is diversity (members of the National Class are citizens of a State different from Defendant), (ii) the amount in controversy exceeds $5,000,000 exclusive of interests and costs, and (iii) there are 100 or more members in the proposed National Class and in the proposed California Sub-Class.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because NVIDIA is subject to personal jurisdiction due to the fact that it transacts business in this Judicial District and resides here for venue purposes. Also, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District.

## PARTIES

7.      Plaintiff Timothy Farley is a citizen of California and resides at 3648 Whitehaven Avenue, Ceres, California, 95307. On September 19, 2014, Plaintiff Farley purchased two GIGABYTE GV-N970G1 Gaming-4GD GeForce GTX 970 4GB graphics cards at a cost of $739.98 ($369.99 each).

---

[2] http://www.pcper.com/reviews/graphics-cards/nvidia-discloses-full-memory-structure-and-limitations-gtx-970

8. Plaintiff Alexander Montgomery is a citizen of California and resides at 1517 Sir Francis Drake Boulevard, San Anselmo, California, 94960. On December 2, 2014, Plaintiff Montgomery purchased a MSI GTX 970 Gaming 4G graphics card at a cost of $349.99.

9. NVIDIA Corporation is a Delaware corporation with a principal place of business in Santa Clara, California. NVIDIA is a visual computing company and is engaged in the business of designing, manufacturing, selling, and distributing computing equipment, including the GTX 970. The company's products are used in gaming, design and visualization, high performance computing, data center, and automotive and smart device markets. NVIDIA sells its products, including the GTX 970 to equipment manufacturers, original design manufacturers, system builders, motherboard manufacturers, and add-in board manufacturers across the United States, including California.

## **FACTS**

10. NVIDIA developed, designed, manufactured, marketed, and sold the GTX 970 to consumers across the United States. The GTX 970 was made widely available to consumers in September 2014, at costs that range between $330 to $500. Upon information and belief, NVIDIA has sold the GTX 970 to tens of thousands of consumers nationwide including thousands of consumers in the state of California.

11. Since that time, NVIDIA has sold and continues to sell the GTX 970 under a marketing scheme that disseminates information about the GTX 970, which is misleading because the characteristics, qualities, and capabilities of the GTX 970 do not conform to NVIDIA's representations. Through direct sales channels and retailers, NVIDIA makes material representations to market GTX 970 devices including (See Figure 1):

a. Standard Memory Config." is "4GB." [3]

b. "Memory Interface" is "GDDR5." [4]

c. "ROP" of "64". [5]

---

[3] http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/specifications
[4] *Id.*
[5] http://www.anandtech.com/show/8935/geforce-gtx-970-correcting-the-specs-exploring-memory-allocation

d.    "L2 Cache" of "2MB".[6]

e.    The product packaging for the GIGABYTE GV-N970G1 Gaming-4GD GeForce GTX 970 4GB represents that the product is a "4GB GDDR5" device. See Exhibit A attached hereto incorporated here by reference.

f.    The product packaging for the MSI GTX 970 Gaming 4G graphics card represents that the product is a "4GB GDDR5" device. See Exhibit B attached hereto incorporated here by reference.

# GEFORCE GTX 970 SPECIFICATIONS *(based on base clock)*

| | |
|---|---|
| Graphics Processing Clusters | 4 |
| Streaming Multiprocessors | 13 |
| CUDA Cores | 1664 |
| Texture Units | 104 |
| ROP Units | 64 |
| Base Clock | 1050 MHz |
| Boost Clock | 1178 MHz |
| Memory Clock (Data rate) | 7000 MHz |
| L2 Cache Size | 2048K |
| Total Video Memory | 4096MB GDDR5 |
| Memory Interface | 256-bit |
| Total Memory Bandwidth | 224 GB/s |

GTX 970 Reviewer's Guide: Specifications

(*Figure 1*)[7]

12.    Despite the representations proffered by NVIDIA, the GTX 970 does not actually conform nor perform to these specifications during actual use.

13.    NVIDIA withheld the true specifications of the GTX 970 from consumers, including Plaintiff, despite having access, actual knowledge, and exclusive possession of information that contradicted the marketed and represented specifications. In tandem with its affirmative statements to the contrary, NVIDIA's material omission that the GTX 970 does not actually perform as represented, would be likely to, and did, mislead reasonable consumers, specifically those within NVIDIA's target market for this product.

---

[6] *Id.*
[7] *Id.*

14.     In the PC gaming world, whether for entertainment or educational purposes, consumers of high end graphics processing units ("GPUs") like the GTX 970 make purchasing decisions based on a product's hardware specifications for which consumers rely heavily on a manufacturer's own marketing, advertisements, and sales presentations, as well on product reviews produced by professional product reviewers ("PPR").[8] NVIDIA knows that its customers rely on information published by PPRs, so it sends new or soon to be released products, along with a "Reviewer's Guide" to PPRs, free of charge, with the understanding that a PPR will review the product, often in video form, and post a copy of the review online for the PPR's subscribers (and the public) to view. NVIDIA knows that its customers rely on the articles and product reviews published by PPRs and the press. Even on its own website, NVIDIA provides links to product review pages published and maintained by PPRs.[9] The "Reviewer's Guide" NVIDIA sends to PPRs contains product information including *inter alia*, features, specifications, and installation tips.[10] Because NVIDIA's claims were included in advertisements, marketing, and sales presentations, including a "Reviewer's Guide", reasonable consumers of the GTX 970 would likely be misled into believing the GTX 970 functioned using a full pool of 4GB VRAM, 64 ROP, and 2048 KB of L2 cache, when in fact it did not. And NVIDIA's misrepresentations and omissions alleged herein are of the type that would be material to a significant number of purchasers of the GTX 970.

15.     NVIDIA also advertises and promotes the publications by PPRs on its own website in order to bolster sales of the GTX 970.[11]

16.     Due to NVIDIA's deceptive marketing scheme, Plaintiffs and Class Members were exposed to its misleading representations and purchased GPUs containing the GTX 970 under the false belief that it would function in accordance with their

---

[8] See e.g., LinusTechTips. "ASUS Strix GeForce GTX 970 Video Card." *YouTube*. N.p., 22 Sept. 2014. Web. 26 Feb. 2015. https://www.youtube.com/watch?v=Eqz4tDM6Wl8 (over 480,000 views); *see also* JayzTwoCents. "Gigabyte GTX970 G1 Gaming Super Overclock Windforce Edition." *YouTube*. N.p., 19 Sept. 2014. Web. 26 Feb. 2015. (over 280,000 views).
[9] http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/reviews
[10] See Figure 1.
[11] http://www.geforce.com/hardware/desktop-gpus/geforce-gtx-970/reviews

---

reasonable expectations, which they held based upon NVIDIA's marketing (including that published by PPRs). Accordingly, NVIDIA's misleading claims were a substantial factor in Plaintiffs' and Class Members' decisions to purchase the GTX 970.

17.    On two separate occasions, NVIDIA has admitted that the GTX 970 doesn't conform to NVIDIA's own marketing or the reasonable expectations of a typical purchaser of the product.

18.    On January 25, 2015, NVIDIA's Senior VP of Hardware Engineering, Jonah Alben, disclosed that although the GTX 970 technically contains 4GB of VRAM, only 3.5GB perform as advertised, while the final 0.5GB of operates at a much slower rate. As a consequence of this misrepresentation, when the GTX 970 needs to access the final .5GB of VRAM, the application being run slows down dramatically and in effect becomes unusable. Alben admitted that NVIDIA "screwed up" the representations of the GTX 970's specifications within the Reviewer's Guide.

19.    Alben also admitted that the GTX 970 only contains 56 ROP and not the advertised 64 ROP. Similarly, he admitted the L2 cache was only 1792 KB, 12.5% less than the advertised 2048 KB.

20.    On February 24, 2015, NVIDIA's CEO, Jen-Hsun Huang confirmed Alben's statements in a press release of his own, where he, in effect confirmed the facts alleged in this Complaint. [12] Specifically, that even though the GTX 970 is advertised as "a 4GB card[,]" the "upper 512MB … is segmented and has reduced bandwidth." He further admitted that "[NVIDIA] failed to communicate this internally to our marketing team, and externally to reviewers at launch."

21.    Even in light of these admissions, NVIDIA continues to market and sell the GTX 970 using the same deceptive and misleading statements it has published all along.

22.    When a computer operation, in most instances a computer game, demands access to VRAM beyond 3.5GB, the GTX 970 will utilize the slower 0.5GB of the total 4GB of VRAM. While rate of access to the initial 3.5GB of VRAM is 224GB/s, the rate of

---

[12] http://blogs.nvidia.com/blog/2015/02/24/gtx-970/

access to the 0.5GB portion of the VRAM is a mere 24GB/s. The slower rate of access into the final 0.5GB is averaged across the GTX 970's overall performance speed, resulting in a speed reduction. As a result, Plaintiff and Class members experience a drastic reduction in Frames Per Second ("FPS") rendered in the application or game that they are utilizing. To the many owners of the GTX 970, this is much more than a de minumus speed reduction. From a practical standpoint, this slow down causes the visuals of a computer application to, stutter, chop, and distort, in effect making the application or game unusable when accessing VRAM beyond the initial 3.5GB.

23.    NVIDIA also claims that the GTX 970 is designed and capable of performing in 4K (a High Definition Standard above that of 1920x1080, also known as 1080p HD), when in fact it cannot. And even if the GTX 970 can technically reach a threshold to be classified as 4K, it is incapable of performing at a level that would meet the expectations of a reasonable consumer of this type of product, in part, due to the chip architecture and herein described sputtering, chopping, and distorting. NVIDIA boasts:

> To date, only GeForce GTX graphics cards are capable of smoothly rendering action at 4K in multi-GPU configurations, a fact pattern proven by the FCAT Frame Capture Analysis Tool, which has been adopted by leading press sites keen to show their readers exactly how a GPU performs, and whether the rendered action is smooth and stutter free.[13]

> 4K revolutionizes the way you view your games by adding four times as many pixels as commonly used in 1920x1080 screens, opening your eyes to rich, superbly-detailed worlds. If you have a high-end GeForce GTX PC, you're ready for the revolution. Just plug and play and you'll immediately receive a flawless, jaw-dropping experience.[14]

24.    That the GTX 970 cannot perform as advertised affects the reasonable expectations of the typical purchaser, including Plaintiffs and Class Members because it is not a "future proof" card as expected. Due to the fragmented nature of the GTX 970's chip architecture and its resulting non-conforming performance when compared to other GPUs

---

[13] http://www.geforce.com/hardware/technology/4k/technology
[14] http://www.geforce.com/hardware/technology/4k

that utilize a single pool of 4GB of VRAM (a true 4GB), the GTX 970 is incapable of outputting 4K resolution without the above mentioned performance problems, including stuttering, chopping, or distorting. Therefore, Plaintiffs and Class Members will be required to purchase a new GPU in order to meet this quickly adopting standard, despite having already being deceived by NVIDIA into believing that the GTX 970 was capable to perform flawlessly at the 4K level.

25.     Plaintiff and Class members purchased the GTX 970 to achieve a high resolution gaming experience, which they reasonably believed was possible upon reading and relying upon on NVIDIA's misleading representations. Instead, Plaintiffs and Class members were deceived because the GTX 970 is incapable of delivering the 4K gaming experience it promised, and if it is technically capable, it is incapable of doing so without the above mentioned performance problems, including sputtering, chopping, or distorting.

26.     In sum, Plaintiffs and Class Members were deceived by NVIDIA's misleading advertising and representations of the specifications, characteristics, qualities, and capabilities of the GTX 970, and purchased a product did not conform to the proffered representations, and have been injured by NVIDIA's unlawful conduct.

## PLAINTIFF FARLEY'S EXPERIENCE

27.     Plaintiff Farley was in the market for a new graphics card that would be capable of handling the ever increasing minimum hardware requirements that today's gaming software requires to ensure optimal performance.

28.     One of the graphics cards that Plaintiff considered purchasing was the GTX 970. In September, 2014, during his search, Plaintiff read articles[15] and watched numerous product review videos on the Internet that discussed the GTX 970's specifications and repeated those found in NVIDIA's "Reviewer's Guide."

---

[15] http://www.guru3d.com/articles-pages/gigabyte-geforce-gtx-970-g1-gaming-review,1.html;
http://www.tomshardware.com/news/nvidia-gtx-980-970-maxwell,27707.html;
http://www.techspot.com/review/885-nvidia-geforce-gtx-970-gtx-980/page2.html
(Each article was viewed and read by Plaintiff on its date of publication).

---

29.     These articles, videos, and representations made on the product packaging directly influenced his purchasing decision, and in reliance on such, Plaintiff decided that the GTX 970 met his requirements.

30.     On September 19, 2014, Plaintiff purchased two GIGABYTE GV-N970G1 Gaming-4GD GeForce GTX 970 4GB at a cost of $739.98 ($369.99 each).

31.     Plaintiff purchased the GTX 970, in part because he thought it would provide a graphical experience that utilized the entire 4GB of VRAM. On January 27, 2014, Plaintiff found that he had been misled by NVIDIA when he learned from a popular website that the "usable memory for the GTX 970 is a 3.5 GB partition."[16]  Plaintiff was looking forward to utilizing what he thought was the full potential of the card, which as it turns out, was never actually possible. Plaintiff was surprised to discover that even though NVIDIA advertised that the GTX 970 was capable of utilizing a single 4GB pool of VRAM at a speed of 224GB/s, possessed 64 ROP, 2048KB of L2 cache, and performing flawlessly in 4K resolution, this was not true.

32.     Plaintiff now owns two GTX 970s that he must either sell at a loss or use for purposes other than those which he purchased it for.

**PLAINTIFF MONTGOMERY'S EXPERIENCE**

33.     Plaintiff Montgomery was in the market for a new graphics card that would be capable of handling the ever increasing minimum hardware requirements that today's gaming software requires to ensure optimal performance.

34.     One of the graphics cards that Plaintiff considered purchasing was the GTX 970. In November, 2014, during his search, Plaintiff read articles[17] and watched numerous product review videos on the Internet that discussed the GTX 970's specifications and repeated those found in NVIDIA's "Reviewer's Guide."

---

[16] http://www.guru3d.com/news-story/does-the-geforce-gtx-970-have-a-memory-allocation-bug.html
[17] http://www.overclockersclub.com/reviews/msi_gtx_970_gaming_4g/ (viewed and read by Plaintiff on approximately November 30, 2014).

35.    These articles, videos, and representations made on the product packaging directly influenced his purchasing decision, and in reliance on such, Plaintiff decided that the GTX 970 met his requirements.

36.    On December 2, 2014, Plaintiff purchased a MSI GTX 970 Gaming 4G graphics card at a cost of $349.99.

37.    Plaintiff purchased the GTX 970, in part because he thought it would provide a graphical experience that utilized the entire 4GB of VRAM. Specifically, Plaintiff purchased his GTX 970 as the first step in a two step plan to upgrade his computer to be capable of gaming in 4K resolution. Plaintiff planned to achieve his plan by using a process called Scalable Link Interface ("SLI"). SLI is a technology that uses an algorithm of parallel processing for computer graphics, which allows two or more graphics cards to be linked together to produce a single output. Plaintiff anticipated that he would purchase a second GTX 970 as the second step in his plan to use SLI to achieve a gaming experience in 4K resolution. Yet, his plan was never achieved because on January 27, 2015 Plaintiff was surprised to discover that even though NVIDIA advertised that the GTX 970 was capable of utilizing a single 4GB pool of VRAM at a speed of 224GB/s, possessed 64 ROP, 2048KB of L2 cache, and performing flawlessly in 4K resolution, this was not true. This newly discovered information foiled Plaintiff's plan to use SLI with a second GTX 970.

38.    Plaintiff now owns a GTX 970 that he must either sell at a loss or use for purposes other than those which he purchased it for.

## CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this class action on behalf of themselves individually and on behalf of all others similarly situated as members of the following proposed national class and subclass (collectively, the "Class"):

### National Class

All persons residing in the United States who purchased a graphics or video card that contains a GTX 970 GPU at retail and not solely for purposes of resale or distribution since September 2014 (the "Class Period");

---

**California Sub-Class**

> All persons residing in the California who purchased a graphics or video card that contains a GTX 970 GPU at retail and not solely for purposes of resale or distribution during the Class Period.

Excluded from the Class are:

    a.    All judicial officers in the United States and their families through the third degree of relationship;

    b.    Defendant and any of their officers, directors and employees and any person or entities who has already settled or otherwise compromised similar claims against the defendant;

    c.    Plaintiffs' counsel, anyone working at the direction of Plaintiffs' counsel, and/or their immediate family members; and

    d.    Anyone who has pending against the named defendant on the date of the Court's final certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein.

40.   This action is brought and may properly be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3) and (c)(4). This action satisfied the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

41.   *Numerosity* – The National Class is so numerous that the individual joinder of all members is impracticable. While the exact number of National Class members is currently unknown and can only be ascertained through appropriate discovery, Plaintiff believes that the National Class includes tens of thousands of individuals and the Georgia Sub-Class includes thousands of individuals.

42.   *Commonality* – Common legal and factual questions exist and predominate over any questions affecting only individual Class members. These common questions, which do not vary among Class members and which may be determined without reference to any Class member's individual circumstances, include but are not limited to:

    a.    Whether Defendant's representations of the GTX 970, as set forth above, were false, misleading, or reasonably likely to deceive customers targeted by such statements;

---

b.   Whether Defendant had adequate substantiation of their claims prior to making them;

c.   Whether Defendant's failure to disclose that the GTX 970 did not perform as advertised and represented was material and would be likely to mislead a reasonable consumer;

d.   Whether the GTX 970 performs as marketed and represented;

e.   Whether Defendant charged a premium price for the GTX 970 devices;

f.   Whether Defendant engaged in unfair, unlawful, and/or deceptive business practices as to the GTX 970 in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*;

g.   Whether Defendant represented, through its words or conduct, that the GTX 970 provided performance benefits that it did not actually have in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*;

h.   Whether Defendant's conduct alleged herein violated public policy; and

i.   Whether Plaintiffs and the Class have been injured by the wrongs complained of herein, and if so, whether Plaintiffs and the Class are entitled to injunctive and/or other equitable relief, including restitution, disgorgement, and if so, the nature and amount of such relief.

43.   *Typicality* – Plaintiffs' claims are typical of the Class members' claims. Defendant's common course of conduct caused Plaintiffs and all Class members the same harm. Likewise, Plaintiffs and other Class members can prove the same facts in order to establish the same claims.

44.   *Adequacy* – Plaintiffs are adequate Class representatives because they are members of the Class they seek to represent and their interests do not irreconcilably conflict with other Class members' interests. Plaintiffs has retained counsel competent and experienced in consumer protection class actions, and Plaintiffs and their counsel intend to prosecute this action vigorously for the Class's benefit. Plaintiffs and their counsel will fairly and adequately protect the Class members' interests.

45.   The Class may be properly maintained under Rule 23(b)(2).  Defendant has acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

46.     The Class can be properly maintained under Rule 23(b)(3) and (c)(4). A class action is superior to other available methods for the fair and efficient adjudication of this litigation because individual litigation of each Class member's claim is impracticable. Even if each Class member could afford to bring individual actions, the court system could not. It would be unduly burdensome for thousands of individual cases to proceed. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

### Violation of California Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

47.     Plaintiffs incorporate by reference the allegations set forth above

48.     NVIDIA's conduct with regard to the GTX 970 problem is an unfair and unlawful business practice in violation of California Business and Professions Code § 17200.

49.     California Business and Professions Code § 17200 applies to all claims of all the Class members.

50.     NVIDIA engaged in and continues to engage in acts or practices that constitute unfair competition as defined by Business and Professions Code § 17200.

## UNLAWFUL PRONG OF THE UCL

51.     The unlawful acts and practices of NVIDIA alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code § 17200. Defendant's unlawful business acts and/or practices as alleged herein have violated numerous state, statutory and/or common laws. Among other laws,

Defendant has violated Business and Professions Codes § 17500, *et seq*., as well as the Lanham Act, 15 U.S.C. §1111, *et seq.*

52.     Plaintiffs have standing to pursue these claims, and as alleged in this complaint, have lost money as a result of Defendant's unlawful acts. But for Defendant's misrepresentations and omissions of a material nature, Plaintiffs would not have purchased the GTX 970 or would have otherwise expected to pay less.

**UNFAIR PRONG OF THE UCL**

53.     Plaintiffs have standing to pursue this claim, as Plaintiffs have suffered financial injury and has spent money as a result of the NVIDIA's material misrepresentations and omissions. Specifically, Defendant's acts and/or practices alleged herein were and are unfair within the meaning of Business and Professions Code § 17200.

54.     The harm to California and out of state consumers outweighs the utility, if any, of Defendant's acts and/or practices as alleged herein. Thus, Defendant's deceptive business acts and/or practices, as alleged herein, were unfair within the meaning of the Business and Professions Code § 17200.

55.     In addition, as alleged herein, NVIDIA intended that consumers would be misled and/or deceived into believing that GTX 970 was a better performing product.

56.     At all relevant times, Defendant's misconduct and omissions alleged herein: (a) caused substantial injury to the Public; (b) had no countervailing benefit to consumers or to competition that could possible outweigh this substantial injury; and (c) caused damage to ordinary consumers. Thus, NVIDIA's acts and/or practices as alleged herein were unfair within the meaning of Business and Professions Code § 17200.

57.     Consumers have been, and continue to be, injured by NVIDIA's sale of GTX 970.Class Members have suffered damage and lost money as a result of the deceptive conduct as alleged herein. The unlawful and unfair business acts and practices of NVIDIA, as fully described herein, present a continuing threat to the consumers to be misled and/or deceived by NVIDIA as alleged herein.

58.     Plaintiffs and the Class have been injured and have suffered loss of money or property as a result of Defendant's unfair and unlawful business acts and practices.

59.     Plaintiffs suffered injury by overpaying for GTX 970.

60.     Plaintiffs suffered injury by paying more for GTX 970 than they would have if they had known the truth.

61.     Plaintiffs request appropriate relief to prevent Defendant from continuing its unfair, deceptive, and unlawful practices with regard to GTX 970.

**FRAUDULENT PRONG OF THE UCL**

62.     Plaintiffs have standing to pursue this claim, as plaintiffs have suffered financial injury by way of payment of money for the product as a result of Defendant's deceptive acts.

63.     The conduct at issue was likely to, and did in fact, deceive plaintiffs and the class members. By and through misrepresentations and omissions of a material nature, NVIDIA acted in a deceptive manner. NVIDIA omitted to disclose the true nature of the GTX 970's performance in terms of VRAM, Cache, and ROP properties.

64.     In fact, as NVIDIA has now admitted, the GTX 970 performs less than represented.

65.     Plaintiffs request appropriate relief, including injunctive relief, as well as restitution and/or disgorgement of all funds and profits made by the defendant by this scheme.

**SECOND CAUSE OF ACTION**

**Violation of California False Advertising Law "FAL"**
**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

66.     Plaintiffs incorporate by reference all facts alleged above.

67.     Plaintiffs bring this on behalf of themselves and on behalf of the Class.

68.     Defendant is a California based company disseminating advertising from California throughout the United States.

69.     NVIDIA engaged in a systematic campaign of advertising and marketing the GTX 970. In connection with the sale and the promotion of GTX 970, Defendant disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding the abilities to the general public through various forms of media, including but not limited to product packaging, product displays, labeling, advertising and marketing. However, NVIDIA knew or reasonably should have known that the GTX 970 does not make available to users the advertised capabilities, and that the failure to disclose these facts was a material omission.

70.     When NVIDIA disseminated the advertising described herein, it knew, or by the exercise of reasonable care should have known, that the statements concerning GTX 970 were untrue or misleading, or omitted to state the truth about the GTX 970, in violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

71.     As a proximate result of NVIDIA's conduct, Plaintiffs and members of the Class were exposed to these misrepresentations, omissions and partial disclosures, purchased the GTX 970 in reliance on these misrepresentations, omissions and partial disclosures, and suffered monetary loss as a result.

72.     NVIDIA made such misrepresentations despite the fact that it knew or should have known that the statements were false, misleading, and/or deceptive.

73.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

74.     Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiffs and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ the above-described practices in advertising the sale of the GTX 970. Plaintiffs seek an order requiring Defendant to make full corrective disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial disclosures.

75.     On information and belief, Defendant has failed and refused, and in the future will fail and refuse, to cease its deceptive advertising practices, and will continue to

do those acts unless this Court orders Defendant to cease and desist pursuant to California Business and Professions Code § 17535.

76.     Plaintiff, individually and on behalf of the Class, seeks restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated in the Class, prays the Court enter judgment against NVIDIA as follows:

a.     An Order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their Counsel to represent the Class;

b.     An Order awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing their unlawful practices as set forth herein;

c.     Declare that the actions of Defendants, as set out above, violate California Law.  To wit, Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*;

d.     Order Defendant to pay Plaintiffs and other Class and Subclass members an amount of actual, statutory, and punitive damages, and restitution in an amount to be determined at trial, and where allowed by law;

e.     Award Plaintiffs and the Class:

   i.     their reasonable litigation expenses and attorneys' fees;

   ii.    pre- and post-judgment interest, to the extent allowable;

   iii.   restitution, disgorgement and/or other equitable relief as the Court deems proper;

   iv.    permanent injunction prohibiting NVIDIA from engaging in the conduct and practices complained of herein;

   v.     statutory damages under 18 U.S.C. § 2520;

   vi.    punitive damages as allowed by law; and

f.     Grant such other relief as may be just and proper.

Dated:  April 21, 2015            AUDET & PARTNERS, LLP,

                                   /s/ William M. Audet
                                  William M. Audet
                                  waudet@audetlaw.com
                                  Jonas P. Mann
                                  jmann@audetlaw.com
                                  Theodore H. Chase
                                  tchase@audetlaw.com
                                  221 Main Street, Suite 1460
                                  San Francisco, CA 94105
                                  t. 415.568.2555
                                  f. 415.568.2556

                                  Gary E. Mason
                                  gmason@wbmllp.com
                                  (to be admitted *pro hac vice*)
                                  Benjamin S. Branda
                                  bbranda@wbmllp.com
                                  (to be admitted *pro hac vice*)
                                  Esfand Y. Nafisi
                                  enafisi@wbmllp.com
                                  (to be admitted *pro hac vice*)
                                  WHITFIELD BRYSON & MASON LLP
                                  1625 Massachusetts Ave., NW, Ste. 1605
                                  Washington, DC  20036
                                  t. 202.429.2290
                                  f. 202.429.2294

                                  *Attorneys for Plaintiff*

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: April 21, 2015

                                  /s/ William M. Audet
                                  By:   William M. Audet

---

# EXHIBIT A



# EXHIBIT B

